IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM SNYDER and JADE SANTORO, | |
| Plaintiffs, | No. C 03-04927 JSW |
| v. | |
| CITY AND COUNTY OF SAN FRANCISCO, EARL SANDERS, individually and in his official capacity as Chief of Police for the San Francisco Police Department, ALEX FAGAN, SR., individually and in his official capacity as Deputy Chief of Police for the San Francisco Police Department, | **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| Defendants. | |

Now before the Court is the motion filed by defendants City and County of San Francisco (the "City") and former Deputy of Chief of Police Alex Fagan, Sr.[1] (collectively, "Defendants") for summary judgment pursuant to Federal Rule of Civil Procedure 56. Having carefully reviewed the parties' pleadings, relevant legal authority, and the parties' arguments at the hearing on this matter, the Court hereby GRANTS Defendants' motion for summary judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiffs filed this action on November 5, 2003, asserting claims against Defendants pursuant to 42 U.S.C. § 1983 and California Civil Code § 52.1. In their complaint, Plaintiffs allege that Defendants' conduct, including the conduct of Alex Fagan, Sr. in his individual

---

[1] The parties stipulated to the dismissal of former Chief of Police Prentice Earl Sanders as a defendant on December 13, 2005.

1  capacity, violated Plaintiffs' Fourth and Fourteenth Amendment rights.  After Defendants filed
2  a motion to dismiss the complaint, which this Court denied, Plaintiffs filed a First Amended
3  Complaint ("FAC").

4  According to the complaint, at approximately 2:30 a.m. on November 20, 2002, Alex
5  Fagan, Jr., David Lee, and Matthew Tonsing ("State Defendants"), each of whom was
6  employed at that time as a San Francisco Police Officer, were talking on Union Street in San
7  Francisco after leaving a party honoring the recent promotion of Alex Fagan, Jr.'s father, Alex
8  Fagan, Sr.  (*See* FAC, ¶ 18.)  The State Defendants were neither on-duty nor wearing a uniform
9  on the night in question.  (*See* Declaration of Sean F. Connolly in Support of Defendants'
10 Motion for Summary Judgment ("Connolly Decl."), Ex. A at 104:14-105:8; 115:3-24; 144:18-
11 145:6.)  The three encountered plaintiffs Snyder and Santoro, who were walking to their car
12 with steak fajitas.  (FAC, ¶ 18.)  Either Fagan, Jr. or Tonsing called to Plaintiffs and demanded
13 that Plaintiffs give the State Defendants their food.  (*Id.*)  Plaintiffs ignored the demand and
14 continued walking away.  (*Id.*)  A short time later, and allegedly without provocation, the State
15 Defendants attacked Plaintiffs.  Plaintiff Santoro "lost consciousness, was bleeding profusely
16 from his injuries and suffered a concussion, a broken nose, a deep gash in his scalp, and
17 numerous bruises and lacerations on his limbs and torso."  (*Id.*)  Plaintiff Snyder also suffered
18 "numerous bruises and lacerations."  (*Id.*)  The State Defendants' conduct was not in any way
19 related to the performance of their official duties as police officers.  (*See* Declaration of John
20 Houston Scott in Opposition to Motion for Summary Judgment ("Scott Decl."), Ex. A
21 (Deposition of Adam Snyder) at 103:7-129:18.)

22 After the alleged assault (the "Incident"), the State Defendants drove away in Lee's
23 pick-up truck.  (FAC, ¶ 20.)  Snyder noted the license plate and called the police.  (*Id.*)  The
24 State Defendants returned to the scene in Lee's pick-up truck, Plaintiff Snyder identified the
25 truck, and the officers dispatched to the scene stopped the vehicle.  (FAC, ¶ 21.)

26 Former Officer Fagan, Jr. had a well-documented history of aggressive behavior while
27 on-duty.  (*See* Scott Decl., Exs. D, E; Declaration of Anthony V. Bouza in Opposition to
28 Motion for Summary Judgment ("Bouza Decl.") at 1; Declaration of Ron Martinelli in

2

Opposition to Motion for Summary Judgment ("Martinelli Decl.") at 12-18.) In particular, one incident on September 18, 2002, involving former Officer Fagan, Jr. and a suspect named James Smith, prompted Sergeant Vicki Stansberry, Fagan, Jr.'s supervising officer at the time, to write a memorandum regarding Fagan, Jr.'s aggressive behavior toward Mr. Smith. (Scott Decl., Ex. D.) This memorandum described Fagan, Jr.'s aggressive behavior as a progressive pattern, and recommended that Fagan, Jr. be retrained. (*Id.*)

Plaintiffs allege that the Incident on Union Street was the result of the custom and practice of the San Francisco Police Department ("SFPD") of failing to train its officers in the proper use of force and condoning and ratifying police officers' use of excessive force by on- and off-duty officers. (FAC, ¶¶ 26, 29.) According to Plaintiffs, this custom and practice "set in motion the deprivation of [P]laintiffs' constitutional rights," and ultimately caused Plaintiffs' injuries. (FAC, ¶¶ 16-17.)

On November 2, 2005, Defendants filed the instant motion for summary judgment. Defendants argue that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on the following grounds: (1) the State Defendants' off-duty conduct during the Incident was neither under color of law nor within the scope of employment; (2) Plaintiffs have failed to submit evidence of any official policy, custom or practice of encouraging or condoning off-duty attacks on citizens; (3) Plaintiffs have presented no evidence that Alex Fagan, Sr. had any personal involvement in the training, supervision, or disciplining of the off-duty State Defendants; and (4) Plaintiffs have made no showing of conduct involving threats, intimidation, or coercion by Alex Fagan, Sr. or another City employee acting in the scope of employment.

**ANALYSIS**

**A.    Legal Standards Applicable to a Motion for Summary Judgment.**

A principal purpose of the summary judgment procedure is to identify and dispose of factually unsupported claims. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material

1  fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).
2  "In considering a motion for summary judgment, the court may not weigh the evidence or make
3  credibility determinations, and is required to draw all inferences in a light most favorable to the
4  non-moving party." *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).

5  The party moving for summary judgment bears the initial burden of identifying those
6  portions of the pleadings, discovery, and affidavits that demonstrate the absence of a genuine
7  issue of material fact. *Celotex*, 477 U.S. at 323. An issue of fact is "genuine" only if there is
8  sufficient evidence for a reasonable fact finder to find for the non-moving party. *Anderson v.
9  Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it may affect the outcome
10 of the case. *Id.* If the party moving for summary judgment does not have the ultimate burden
11 of persuasion at trial, that party must produce evidence which either negates an essential
12 element of the non-moving party's claims or that party must show that the non-moving party
13 does not have enough evidence of an essential element to carry its ultimate burden of persuasion
14 at trial. *Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 1990).
15 Once the moving party meets its initial burden, the non-moving party must go beyond the
16 pleadings and, by its own evidence, "set forth specific facts showing that there is a genuine
17 issue for trial." Fed. R. Civ. P. 56(e).

18 In order to make this showing, the non-moving party must "identify with reasonable
19 particularity the evidence that precludes summary judgment." *Keenan v. Allan*, 91 F.3d 1275,
20 1279 (9th Cir. 1996). In addition, the party seeking to establish a genuine issue of material fact
21 must take care adequately to point a court to the evidence precluding summary judgment
22 because a court is "'not required to comb the record to find some reason to deny a motion for
23 summary judgment.'" *Carmen v. S.F. Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001)
24 (quoting *Forsberg v. Pac. Nw. Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). If the non-
25 moving party fails to point to evidence precluding summary judgment, the moving party is
26 entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

27
28

4

**B.     Plaintiffs' Claim of Municipal Liability on the Part of the City.**

    **1.     Legal Standard.**

Section 1983 of Title 42 of the United States Code states in pertinent part that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C § 1983. A person must act "under color of" law to be held liable under this section. *Id*.

Under conventional Section 1983 analysis, the Ninth Circuit has held that "[a] police officer's actions are under pretense of law only if they are 'in some way related to the performance of official duties.'" *Huffman v. County of Los Angeles*, 147 F.3d 1054, 1058 (9th Cir. 1998) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 838 (9th Cir. 1996) (internal quotations omitted)). Here, the State Defendants were neither on-duty nor wearing a uniform on the night of the Incident. (*See* Connolly Decl., Ex. A at 104:14-105:8; 115:3-24; 144:18-145:6.) In addition, because getting into an unprovoked physical altercation over steak fajitas was not in any way related to the performance of the State Defendants' official duties, their actions did not occur under color of law and could not give rise to liability on the part of the City under conventional Section 1983 analysis. *See Huffman*, 147 F.3d at 1058.

Therefore, to establish Section 1983 liability on the part of the City under *Monell v. Department of Social Services*, 436 U.S. 658 (1978), Plaintiffs must satisfy certain conditions. Plaintiffs must demonstrate that (1) they had a constitutional right; (2) the City had a custom created by those who may be fairly said to determine official policy, which amounted to, at a minimum, deliberate indifference to Plaintiffs' constitutional rights; and (3) the custom was the moving force behind the constitutional violation. *See Blair v. City of Pomona*, 223 F.3d 1074, 1079 (9th Cir. 2000); *see also Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992).

The threshold inquiry is whether the plaintiff has alleged a constitutional deprivation. The Due Process Clause provides that "no State shall . . . deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV, § 1. Substantive due process,

5

however, does not "ensure that private individuals are protected from each other or themselves." *Estate of Imrie v. Golden Gate Bridge*, 282 F. Supp. 2d 1145, 1148 (N.D. Cal. 2003). "[T]here is no constitutional right 'to government aid from private deprivations of constitutional rights even where such aid may be necessary to secure life, liberty or property.'" *Van Ort*, 92 F.3d at 836 (quoting *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (internal brackets omitted)).

The Supreme Court has articulated two exceptions to this general rule: (1) when the government has a "special relationship" with an individual, and (2) when the government has affirmatively acted to place an individual in danger. *L.W. v. Grubbs*, 974 F.2d 119, 121 (9th Cir. 1992) ("*Grubbs I*").

First, the state creates a "special relationship" when it acts to "restrain an individual's freedom to act on his own behalf, [either] through incarceration, institutionalization, or other similar restraint of personal liberty." *DeShaney*, 489 U.S. at 200; *see also Huffman*, 147 F.3d at 1058-59. This exception does not apply here because Plaintiffs were not in custody when the Incident occurred. (*See* FAC, ¶¶ 18-19.)

Second, the state has a duty to protect someone when it "places a person in peril in deliberate indifference to their safety," which "necessarily involves affirmative conduct on the part of the state." *Penilla v. City of Huntington Park*, 115 F.3d 707, 709 (9th Cir. 1997); *Grubbs I*, 974 F.2d at 121. Under this second *DeShaney* exception, "[p]ointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection." *Van Ort*, 92 F.3d at 837. Rather, "the policy must be the proximate cause of the section 1983 injury." *Id.* Moreover, the "state's awareness of dangers is insufficient . . . if the state 'played no part in their creation' or did 'anything to render [the plaintiff] any more vulnerable to them.'" *Estate of Imrie*, 282 F. Supp. 2d at 1149 (quoting *DeShaney*, 489 U.S. at 201 n.2).

The Court will address each of the three requirements for *Monell* liability in turn.

///

///

///

6

### 2. Plaintiffs Have Failed to Point to Affirmative Conduct by the City that Created or Increased the Danger to Plaintiffs.

Plaintiffs contend that the City had a custom or unwritten policy of failing to supervise or discipline officer misconduct, evidenced by the disregard of Sergeant Stansberry's memorandum, which recommended that Fagan, Jr. be retrained. Defendants argue that the City's mere inaction, which Plaintiffs allege encouraged off-duty criminal conduct, does not create Section 1983 liability for harm caused by private actors.

Plaintiffs cannot avoid summary judgment as to the City's alleged Section 1983 liability if they cannot point to any affirmative conduct that created a government duty to protect them from harm. *See Van Ort*, 92 F.3d at 836 (citing *Wood v. Ostrander*, 879 F.2d 583, 588-590 (9th Cir. 1989)). The "'danger creation' basis for a claim . . . necessarily involves affirmative conduct on the part of the state in placing the plaintiff in danger." *Grubbs I*, 974 F.2d at 121. In particular, "the plaintiff must show that the state official participated in creating a dangerous situation, and acted with deliberate indifference to the known or obvious danger in subjecting the plaintiff to it." *L.W. v. Grubbs*, 92 F.3d 894, 899-900 (9th Cir. 1996) ("*Grubbs II*").

In *Estate of Imrie*, the plaintiffs alleged that the municipal defendants had placed Imrie in danger by continuing to open the Golden Gate Bridge to pedestrians without a suicide barrier, thereby creating a needlessly easy way for Imrie to take her life, and had rejected proposals for suicide barriers despite awareness of the history of suicides on the bridge. *Estate of Imrie*, 282 F. Supp. 2d at 1149. The court held that such allegations "do not constitute 'affirmative conduct on the part of the state in placing the plaintiff in danger.'" *Id.* (quoting *Grubbs I*, 974 F.2d at 121). Even the defendants' numerous active decisions against erecting a suicide barrier did not constitute affirmative acts because they merely "left the situation as it was before." *Id.*

The same analysis applies here. Plaintiffs point to former Officer Fagan, Jr.'s admission of inappropriate behavior, as well as the fact that none of the remedial training ordered in September 2002 had occurred as of November 20, 2002, as evidence of affirmative conduct by the City that created a dangerous condition. (*See* Supplemental Declaration of John Houston Scott in Support of Plaintiffs' Sur-Reply ("Supp. Scott Decl."), Ex. A at 104:15-105:9.)

7

Plaintiffs also submit much evidence illustrating Fagan, Jr.'s well-documented history of aggressive behavior. (*See* Scott Decl., Exs. D, E; Bouza Decl. at 1; Martinelli Decl. at 12-18.) More specifically, Plaintiffs argue that Officer Fagan, Jr.'s off-duty conduct on the night of the Incident was entirely consistent with a pattern of on-duty conduct, and that the City affirmatively acted to shield the officer from discipline.

As in *Estate of Imrie*, however, neither the knowledge of Fagan, Jr.'s violent work history nor the City's numerous decisions not to discipline him more severely or fire him can, as a matter of law, constitute "affirmative conduct" that created for Plaintiffs, or exposed them to, a known or obvious danger. *See Estate of Imrie*, 282 F. Supp. 2d at 1149. Rather, at most, Plaintiffs' evidence reveals state inaction. The conduct alleged does not amount to state action of placing Plaintiffs at risk, which is what a *DeShaney* "danger-creation" claim requires. *See Grubbs I*, 974 F.2d at 121. Therefore, Plaintiffs have failed to raise a genuine issue of material fact regarding whether the City had a duty to protect them from harm. Without such a duty, Plaintiffs have no constitutional right to protection from harm caused by private actors such as the off-duty State Defendants. *See Van Ort*, 92 F.3d at 836. Accordingly, because Plaintiffs fail to point to evidence precluding summary judgment, the City is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 323.

### 3. Plaintiffs' Evidence Suggests a Disputed Fact Regarding a Disciplinary Custom for On-Duty Conduct.

Even if Plaintiffs could avoid summary judgment regarding whether they had a constitutional right to protection from harm by private actors, they are unable to show that a City policy or custom proximately caused their alleged constitutional injury by off-duty officers. As explained below, in the light most favorable to the Plaintiffs, the evidence suggests that there exists a genuine issue of fact regarding whether there was a policy hindering or obstructing the discipline of on-duty officer misconduct.

A policy is a "deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Fairley v. Luman*, 281 F.3d 913, 918 (9th Cir. 2002)

8

(quoting *Oviatt*, 954 F.2d at 1477). A policy can be one of action or inaction. *Id.* (citing *City of Canton v. Harris*, 489 U.S. 378, 384 (1989) (failure to train)). Moreover, the "inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton*, 489 U.S. at 388.

To constitute "deliberate indifference " and enter the realm of a constitutional violation, any failure to supervise must rise to a level higher than that of negligence. *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998) (holding that "liability for a negligently inflicted harm [by state officials] is categorically beneath the threshold of constitutional due process"). A constitutional violation may be present when the need for additional or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, . . .[that] the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390. Whether a local government entity has manifested a policy of deliberate indifference is generally a question for the jury. *Oviatt*, 954 F.2d at 1478.

Here, Plaintiffs point to evidence manifesting a disputed fact regarding the existence of a SFPD policy or custom of failing to discipline appropriately police on-duty misconduct. Several pieces of evidence, when taken in the light most favorable to the Plaintiffs, support this conclusion. First, a report by the Office of Citizen Complaints ("OCC") for the City, in response to a request from the Board of Supervisors, describes a police pattern of withholding information requested by the OCC. (*See* Plaintiffs' Request for Judicial Notice in Opposition to Motion for Summary Judgment ("RJN"), Ex. B at 1.)[2] Second, a report entitled "Improving SFPD's Cooperation with the Office of Civilian Complaints: Beating the One Year Clock" illustrates several Civil Grand Jury findings, including one that police-created delays in OCC

---

[2] The Court grants Plaintiffs' Request for Judicial Notice of Exhibits B and C, entitled "Response to the Board of Supervisors Regarding SFPD's Pattern of Withholding Information Requested for OCC Investigations" and "Improving SFPD's Cooperation with the Office of Civilian Complaints: Beating the One-Year Clock," respectively, because they are "capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned." Fed. R. Evid. 201(b)(2).

9

investigations "contribute to the eventual dismissal of valid citizen complaints because the investigation could not be concluded within one year." (*Id.*, Ex. C at 7 (emphasis removed).) Third, a report by the American Civil Liberties Union of Northern California states that it "addresses *broader* problems within the [San Francisco Police] Department and outlines the changes that need to be made to build effective accountability systems." (Declaration of Mark Schlosberg in Opposition to Defendants' Motion for Summary Judgment ("Schlosberg Decl."), Ex. A at 1-2) (emphasis added).) Moreover, that same report concludes that "[w]ithout a *culture* that clearly requires accountability and emphasizes that misconduct will not be tolerated, accountability mechanisms, no matter how strong, will be undermined." (*Id.*, Ex. A at 3 (emphasis added).) The broad language of this evidence raises a disputed fact as to the existence of a custom or policy.

In addition, Plaintiffs point to a memorandum by Sergeant Stansberry, describing an incident on September 18, 2002 involving former Officer Fagan, Jr. and a suspect, to illustrate the operation of this custom or policy with respect to one of the State Defendants. (Scott Decl., Ex. D.) Specifically, Plaintiffs point to expert opinion that Sergeant Stansberry's disciplinary recommendation to retrain Fagan, Jr., made after speaking to her police superiors, was not severe enough given this particular officer's pattern of behavior. (*See* Bouza Decl. at 1-2; *see also* Scott Decl., Ex. E at 200-03.) Plaintiffs also proffer a report illustrating a so-called "code of silence" among SFPD officers who do not report officer misconduct out of fear of reprisal. (Schlosberg Decl., Ex. A at 9-10.) Taken together and viewed in the light most favorable to Plaintiffs, the Court finds that such evidence raises an issue of fact regarding the existence of a SFPD custom or policy of failing properly or adequately to discipline officer on-duty misconduct.[3] However, this potentially disputed fact is not material as Plaintiffs cannot

---

[3] Defendants object to the admissibility of Exhibits B and C of Plaintiffs' Request for Judicial Notice, the Schlosberg Declaration, and the Bouza Declaration based on Federal Rules of Evidence 402, 403, 602, 701-703, and 802. (*See* Defendant Prentice Earl Sanders' Evidentiary Objections and/or Motion to Strike Plaintiffs' Evidence Submitted in Opposition at 2-7.) To the extent that Defendants object to the admissibility of the evidence of a potential custom or policy, the Court finds that the outcome of the instant motion would be the same whether or not this evidence is admissible.

10

demonstrate that this alleged custom or policy proximately caused the State Defendants' ***off-duty*** conduct.

### 4. Plaintiffs Have Failed to Identify Any Evidence Showing that Any City Custom or Policy Proximately Caused Their Injury.

Although Plaintiffs may be able to raise an issue of fact with respect to the possible existence of a City custom or policy, this fact is not material because they have failed to show that any such policy or custom proximately caused their injuries. Defendants argue that, as in *Van Ort*, while Plaintiffs' evidence of Officer Fagan, Jr.'s disciplinary record put the City on notice of use of excessive force on-duty, the City could not have reasonably foreseen that Fagan, Jr. would use excessive force off-duty and attack Plaintiffs. Plaintiffs argue that the off-duty Incident was entirely consistent with a pattern of on-duty conduct and that the City had well-documented notice of this prior conduct, but affirmatively acted to shield Fagan, Jr. from discipline.

Unforeseeable, intervening private acts by a state agent "br[eak] the chain of proximate cause connecting action under color of law to the alleged violation of constitutional rights." *Huffman*, 147 F.3d at 1059 (citing *Van Ort*, 92 F.3d at 837). For example, in *Van Ort*, the appellants brought a Section 1983 action against the County of San Diego because a sheriff's deputy, while off-duty, attacked and tortured them. 92 F.3d at 833-34. The appellants had provided a detailed description of the deputy's disciplinary record, which included unauthorized surveillances as well as numerous citizen complaints for use of excessive and improper force and unwarranted violence in arrest and detention. *Id.* at 837. Nevertheless, the Ninth Circuit held that although this evidence may have put the deputy's supervisors on alert that he could be violent on-duty, "the County could not reasonably have foreseen that [the deputy] would become a free-lance criminal and attack the [appellants] as he did." *Id.* Thus, the deputy's "unforeseeable private acts broke the chain of proximate causation" connecting the County's alleged liability to the appellants' injuries. *Id.*

Likewise, in *Huffman*, the appellants there brought a Section 1983 action against the County of Los Angeles alleging that the County had devoted insufficient attention to the

11

unlawful use of firearms by sheriff's deputies while intoxicated, resulting in the appellants' son's death at the hands of an armed off-duty sheriff's deputy in a barroom brawl. 147 F.3d at 1056-57. The County had policies on carrying guns off duty while intoxicated. *Id.* at 1057. The appellants relied on evidence indicating that although the County knew of eighty incidents in the preceding years, some of which involved alcohol, in which off-duty deputies discharged or brandished firearms, it "failed to take adequate steps in investigating these incidents or in disciplining the officers involved." *Id.* at 1060. Despite the close factual connection between the past incidents and the one at issue in the case, the *Huffman* court held, "following *Van Ort*, that the 'facts do not show, as a matter of law' that the County could have foreseen [the deputy's] 'private acts' when it allegedly required him to carry a gun off duty." *Id.* at 1060 (quoting *Van Ort*, 92 F.3d at 837).

Similarly, here, the City is entitled to summary judgment because the actions of the State Defendants were private, intervening acts that broke the chain of causation between any alleged City policy and Plaintiffs' injuries. The evidence Plaintiffs point to fails to raise a genuine issue of material fact. In particular, Plaintiffs submit that "[t]he department failed to acknowledge and in fact ignored" that "whatever negative pattern of violent behavior that Officer Fagan demonstrated while in uniform on-duty, would most certainly carry over to his off-duty behavior as well because he felt 'untouchable' and immune from harm" given his father's position. (Martinelli Decl. at 29-30; *accord* Bouza Decl. at 3 ("such a policy and practice in the SFPD resulted in escalating acts of violence by Fagan, Jr. that culminated in the off-duty incident of November 20, 2002").)

However, even when viewed in the light most favorable to Plaintiffs, this evidence merely shows that the City was on notice of Fagan, Jr.'s on-duty misconduct.[4] The courts in

---

[4] The Court notes a reference in the record suggesting that the City may have been on notice of one incident of possibly off-duty misconduct involving former Officer Fagan, Jr. (*See* Scott Decl., Ex. E at 160-61.) Sergeant Stansberry testified that, on the date of the incident involving Fagan, Jr. and a suspect named James Smith, which formed the basis for Stansberry's memorandum, she was "pretty busy with the ongoing event of the James Smith incident, which went on all night. I mean there was the incident when he was arrested and then there was the incident at the hospital where Alex went to the hospital . . . And he got in another altercation with James Smith, and it just kept going all night."

12

1  *Van Ort* and *Huffman* specifically rejected the argument that the private acts of an off-duty law
2  enforcement officer are the foreseeable consequence of on-duty misconduct, which the
3  municipal entity failed to supervise or discipline. *See Van Ort*, 92 F.3d at 837; *see also*
4  *Huffman*, 147 F.3d at 1060. Indeed, as Defendants persuasively argued at oral argument, the
5  *Huffman* court rejected the causation theory under stronger facts than those present here
6  because in *Huffman* the municipal entity's alleged policy actually purported to regulate off-duty
7  conduct. *See Huffman*, 147 F.3d at 1060 (holding that the "County could [not] have foreseen
8  [the deputy's] private acts *when it allegedly required him to carry a gun off duty*") (emphasis
9  added, internal quotations omitted).

10  In contrast, the record in this case, including the complaints about Fagan, Jr.'s
11  misconduct, fail to address the State Defendants' off-duty conduct. Indeed, part of Plaintiffs'
12  own proffered evidence underscores this: while Plaintiffs make much of the involvement of the
13  OCC in complaints of officer misconduct, "[o]ff-duty misconduct is not within the purview of
14  OCC. Off-duty misconduct complaints are investigated by MCD [Management Control
15  Division of the San Francisco Police Department]." (RJN, Ex. C at 2 n.1.) Plaintiffs have
16  failed to identify a MCD complaint against the State Defendants that would establish that any
17  potential City policy or custom of failing to discipline off-duty conduct was "*closely related* to
18  the ultimate injury." *City of Canton*, 489 U.S. at 391 (emphasis added). Thus, Defendants are
19  entitled to summary judgment because Plaintiffs have failed to raise a genuine issue of material
20  fact with respect to the question of proximate causation.

---

Stansberry also testified that on the day of the James Smith incident, Fagan, Jr.'s shift ended at 2:00 a.m., which would render the ongoing event, to which Stansberry refers, possibly off-duty misconduct by Fagan, Jr. (*See id.* at 154.) However, Plaintiffs have failed to "identify with reasonable particularity" this evidence that might preclude summary judgment. *See Keenan*, 91 F.3d at 1279. The Court "is 'not required to comb the record to find some reason to deny a motion for summary judgment.'" *Carmen*, 237 F.3d at 1029 (quoting *Forsberg*, 840 F.2d at 1418). In addition, because this reference to potentially off-duty conduct is unclear as to both timing and whether the conduct merely reflected a continuing course of on-duty conduct, the Court does not find this evidence sufficient to show a custom of failing to discipline off-duty conduct and thus it cannot defeat summary judgment.

13

Therefore, because there is no genuine issue of material fact concerning the issues of affirmative conduct by the City or proximate causation, the Court grants Defendants' motion for summary judgment on Plaintiffs' *Monell* claim against the City.

**C.     Plaintiffs' Claim of Supervisory Liability.**

Defendants argue that Plaintiffs' federal claims against Alex Fagan, Sr. should be dismissed under the doctrine of qualified immunity because Plaintiffs have failed to present evidence of a constitutional violation. Plaintiffs contend that Fagan, Sr. acted affirmatively to protect his son from discipline with regard to the Stansberry memorandum describing the incident of September 19, 2002, and helped design and implement customs and practices that effectively sabotaged the police disciplinary system.

**1.     Legal Standard.**

A supervisor is liable under Section 1983 if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Jeffers v. Gomez*, 267 F.3d 895, 915 (9th Cir. 2001). There is a distinction between a state actor's individual and official capacity liabilities. *Larez v. City of Los Angeles*, 946 F.2d 630, 645 (9th Cir. 1991). However, because the Court has previously dismissed Plaintiffs' claims against Alex Fagan, Sr. in his official capacity, the Court need only address the question of individual capacity. Namely, a state actor's individual liability "hinges upon his participation in the deprivation of constitutional rights." *Id.* "Supervisory liability is imposed against a supervisory official in his individual capacity for his 'own culpable action or inaction in the training, supervision, or control of his subordinates.'" *Id.* (quoting *Clay v. Conlee*, 815 F.2d 1164, 1170 (8th Cir. 1987)). Similarly, individual capacity liability is available if the official "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury." *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998).

In addition, a law enforcement officer is entitled to qualified immunity in a civil rights action if the district court determines that, in light of the clearly established principles governing the conduct in question at the time of the challenged conduct, the officer could

14

reasonably have believed that the conduct was lawful. *Mendoza v. Block*, 27 F.3d 1357, 1360 (9th Cir. 1994) (citing *Hallstrom v. Garden City*, 991 F.2d 1473, 1482 (9th Cir. 1993)). This determination requires a two-step analysis.

First, the Court must determine whether the law governing the official's conduct was clearly established at the time the challenged conduct occurred. *Id.* For qualified immunity purposes, a right must be clearly established, that is, "the contours of the right must be sufficiently clear that [at the time the alleged unlawful action is taken] a reasonable official would understand that what he is doing violates that right." *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "This does not mean that any official action is protected by qualified immunity 'unless the very action in question has previously been held unlawful,' but it does require that 'in the light of pre-existing law the unlawfulness must be apparent.'" *Id.*

The second step requires that the Court address the question whether, under that clearly established law, a reasonable officer would have believed the conduct to be unlawful. *Id.* If the law governing an official's conduct is clearly established, qualified immunity is available only if a reasonable official would have believed that the conduct at issue was lawful under that clearly established law. *Id.* at 1362 (citing *Hallstrom*, 991 F.2d at 1482). Thus, Fagan, Sr.'s qualified immunity "turns on the objective reasonableness of [his] conduct in light of clearly established law." *Lowe v. City of Monrovia*, 775 F.2d 998, 1011 (9th Cir. 1985).

Further, when a supervisor has no direct involvement or direct management responsibility for a subordinate's conduct, "his qualified-immunity defense should [be] examined within the context of policy-level activities." *Jeffers*, 267 F.3d at 916.

### 2. Fagan, Sr. Is Not Liable in His Individual Capacity.

Here, Plaintiffs assert that Fagan, Sr.'s conduct in failing to supervise or discipline former Officer Fagan, Jr. led to the violation of Plaintiffs' constitutional rights. Fagan, Sr.'s individual liability requires an underlying constitutional violation or injury. *See Larez*, 946 F.2d at 645. However, the Court has already concluded that Plaintiffs have failed to demonstrate that they have suffered a constitutional violation. Consequently, Plaintiffs have

failed to raise a genuine issue of material fact regarding Fagan, Sr.'s claimed supervisory liability.

### 3. Fagan, Sr. Is Entitled to Qualified Immunity.

Even if Plaintiffs could demonstrate that there exists a genuine issue of material fact as to Fagan, Sr.'s supervisory liability, summary judgment is still appropriate because Fagan, Sr. is entitled to qualified immunity. Specifically, there is no "clearly established" constitutional right at issue. On the contrary, as of 2002, the decisions in *Van Ort* and *Huffman* had clearly established that "there is no constitutional right 'to government aid from private deprivations of constitutional rights even where such aid may be necessary to secure life, liberty or property,'" absent affirmative government conduct in creating the danger, which Plaintiffs have failed to show. *Van Ort*, 92 F.3d at 836 (quoting *DeShaney*, 489 U.S. at 196) (internal brackets omitted)); *accord Huffman*, 147 F.3d at 1061. Accordingly, because Plaintiffs cannot meet the first prong of qualified immunity analysis, Fagan, Sr. is entitled to qualified immunity. *See Mendoza*, 27 F.3d at 1360.

Moreover, because Fagan, Sr. had no direct involvement or direct management responsibility for the State Defendants' off-duty conduct, this Court must examine his qualified immunity defense within the context of policy-level activities. *See Jeffers*, 267 F.3d at 916. Plaintiffs cannot raise a genuine issue of material fact as to whether any City custom or policy proximately caused their injuries. Thus, any fact potentially illustrating Fagan, Sr.'s involvement or conduct in creating, maintaining, or following such a policy is not material. *See Anderson*, 477 U.S. at 248.

Therefore, Fagan, Sr. is entitled to summary judgment on the basis of qualified immunity.

### D. Plaintiffs' Claim Under California Civil Code § 52.1.

Having granted summary judgment on each of Plaintiffs' claims under federal law, the Court may exercise its discretion to exercise supplemental jurisdiction over Plaintiffs' state law claims. *See Acri v. Varian Assocs.*, 114 F.3d 999, 1000 (9th Cir. 1997); *see also* 28 U.S.C. §

16

1367(a), (c). The Court exercises its discretion to hear Plaintiffs' state law claim and will now address this claim.

### 1.     Legal Standard.

Sections 52.1(a) and 52.1(b) of the California Civil Code provide a private cause of action "[i]f a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion . . . with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state." Cal. Civ. Code §§ 52.1(a), (b).

Section 820.2 of the California Government Code provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." Cal. Gov't Code § 820.2.

Similarly, section 815.2(a) of the California Government Code provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would . . . have given rise to a cause of action against that employee or his personal representative." Cal. Gov't Code § 815.2(a). However, "a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Cal. Gov't Code § 815.2(b).

Defendants argue that Plaintiffs have no evidence that Fagan, Sr. threatened, intimidated, or coerced Plaintiffs, thereby interfering with Plaintiffs' rights within the meaning of California Civil Code section 52.1. Additionally, Defendants argue that the City is immune because the alleged improper conduct was not within the scope of Fagan, Sr.'s employment. Plaintiffs first contend that the City is liable for Fagan, Sr.'s acts and omissions within the scope of his employment, which allegedly undermined the SFPD's disciplinary process. Plaintiffs next submit that the City is liable because Fagan, Sr. failed to comply with mandatory duties set forth in the City Charter and SFPD General Order 2.04, which requires its members cooperate fully with the OCC to process expediently citizen complaints.

### 2. The City Is Not Liable under California Law for Fagan, Sr.'s Acts or Omissions.

Plaintiffs contend that the City is vicariously liable for Fagan, Sr.'s acts or omissions in undermining the police disciplinary process for the misconduct of officers like Fagan, Jr. Plaintiffs contend that the only material issue in dispute is whether Fagan, Sr. intervened to influence Sergeant Stansberry to recommend that Fagan, Jr. be retrained rather than disciplined after the incident on September 19, 2002. (*See* Supp. Scott Decl., Ex. A at 38:7-39:12; *see also* Scott Decl., Ex. E at 200:14-203:23.)

However, the explicit language of California Government Code § 815.2(a) makes clear that for the City to be vicariously liable, Fagan, Sr. must have "proximately caused" Plaintiffs' injury. Cal. Gov't Code § 815.2(a). The Court has already determined, in the context of the Section 1983 claim, that Plaintiffs have failed to show that a genuine issue of material fact exists with respect to the question of proximate causation. Stated differently, even if the Court accepts as true that Fagan, Sr. intervened to assure that his son was retrained instead of disciplined for his on-duty misconduct on September 19, 2002, Plaintiffs have failed to raise any genuine issue of material fact demonstrating that this alleged conduct proximately caused Plaintiffs' injuries resulting from the State Defendants' ***off-duty conduct*** on the night of the Incident. *See* Cal. Gov't Code § 815.2(a); *see also Van Ort*, 92 F.3d at 840 (discussing the requirements of a claim under California Government Code § 815.2(a)). Therefore, the City cannot be liable under this theory.

### 3. The City Has Not Interfered with Plaintiffs' Rights by Threats, Intimidation, or Coercion.

Plaintiffs next contend that the City is liable because the SFPD failed to comply with mandatory duties set forth in the City Charter and SFPD General Order 2.04 requiring its members to cooperate fully with the OCC in expediently processing citizen complaints. As this Court articulated in its Order on Defendants' Motion to Dismiss, to show that the City is vicariously liable under California Civil Code § 52.1, Plaintiffs have to show that Fagan, Sr. was acting within the scope of his employment when he engaged in this conduct, and that the

18

conduct proximately caused the injuries resulting from the Incident. (*See* Order dated February 1, 2005 denying Defendants' Motion to Dismiss at 8); *see also Lisa M. v. Henry Mayo Newhall Mem'l Hosp.*, 12 Cal. 4th 291, 297-99 (1995). Plaintiffs have failed to present evidence demonstrating that the SFPD's failure to cooperate with the OCC to process citizen complaints has interfered with Plaintiffs' rights by threats, intimidation, or coercion. Similar to their Section 1983 claims and California Government Code § 815.2 claim, Plaintiffs here also have failed to show that there is a genuine issue of material fact demonstrating that conduct related to the processing of OCC complaints proximately caused Plaintiffs' injuries stemming from off-duty police misconduct. Consequently, the City is not liable under this theory either.

Therefore, Defendants are also entitled to summary judgment on Plaintiffs' state law claims.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED on all causes of action. Judgment shall be entered in favor of Defendants and against Plaintiffs.

**IT IS SO ORDERED.**

Dated:  April 6, 2006

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE